IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DERRICK McKINNEY,** :
:
    **Plaintiff** : CIVIL NO. 1:CV-01-02088
:
    **v.** : (Judge Rambo)
:
**C.O. ZIHMER,** *et al.***,** :
:
    **Defendants** :

# M E M O R A N D U M

## I.    Background

Plaintiff Derrick McKinney ("McKinney"), an inmate formerly confined in the State Correctional Institution in Camp Hill, Pennsylvania ("SCI-Camp Hill"), initiated this action *pro se* by filing a civil rights complaint pursuant to 42 U.S.C. § 1983, naming as Defendants Unit Manager William Ward, and Corrections Officers Guthrie, Zihmer, Wise, Stender, and Bloor. (Doc. 1.) McKinney alleges that Unit Manager Ward ordered the remaining Defendants to assault McKinney on two separate occasions in December 1999.

On November 29, 2001, the court *sua sponte* dismissed McKinney's complaint for failure to exhaust his administrative remedies. (Doc. 9.) McKinney appealed the decision to the Third Circuit Court of Appeals and supplemented the record with an April 26, 2000 letter from Robert Bitner, the Chief Hearing Examiner ("Bitner

Letter"), acknowledging receipt of McKinney's appeal of Grievance No. CAM-0099-00. In an opinion filed on June 4, 2003, the Third Circuit concluded that the Bitner Letter could establish McKinney's compliance with the administrative exhaustion requirement and vacated the judgment of this court and remanded the case for further proceedings.[1] (*See* Doc. 39.) The Third Circuit further directed this court to serve Defendants with a copy of the complaint and the Bitner letter, and advised that on remand Defendants "may raise the defense of exhaustion of administrative remedies . . . ." (*Id*. at 5.)

Following remand, Defendants filed a motion to dismiss, or in the alternative for summary judgment, the complaint for failure to exhaust administrative remedies. (Doc. 52.) Defendants asserted that the Bitner Letter concerned the review of Grievance No. CAM-0099-00 which addressed an alleged assault by Officer Guthrie on February 10, 2000. Defendants argued that this grievance did not relate in any way to the allegations against the Defendants that were the basis for McKinney's complaint. As a result, Defendants contended, McKinney had failed to exhaust his administrative remedies.

---

[1] A certified copy of the opinion was issued on June 26, 2003, in lieu of a formal mandate. (*See* Doc. 39.)

On April 8, 2004, the court denied Defendants' motion, holding that although Grievance No. CAM-0099-00 referenced the February 10, 2000 assault, McKinney's claim was amended on appeal. (Doc. 74 at 12.) Specifically, in McKinney's administrative appeal to the Superintendent he alleged that he was assaulted on December 21, 1999 by Officers Guthrie and Zihmer. (*Id.*) This alleged assault was indeed part of the basis for McKinney's instant complaint. As a result, the court denied summary judgment as to all Defendants and directed them to file an answer to McKinney's complaint. (*Id.* at 15.)

After Defendants filed an answer and the parties engaged in a period of discovery, Defendants filed another motion for summary judgment on March 23, 2006. (Doc. 97.) The court denied the motion on December 8, 2006, finding that a genuine issue of material fact existed since the declarations of the parties were at odds as to whether McKinney was unjustifiably beaten in December 1999. (Doc. 111.) Further, the court granted summary judgment as to Unit Manager Ward because the record was devoid of any evidence supporting McKinney's claim against him. (*Id.*)

As the case moved toward trial scheduled in March 2007, all parties filed pretrial memoranda. (Docs. 127 & 132.) Defendants included in their pretrial memorandum the assertion that McKinney had failed to exhaust his administrative

remedies with respect to Defendants Zihmer, Wise, Stender, and Bloor. (Doc. 127.) Following a pretrial conference on March 20, 2007, the court issued an order reversing the prior denial of summary judgment with respect to those Defendants. (Doc. 139.) The parties continued to trial with regards to Officer Guthrie. On April 3, 2007, a jury returned a verdict in favor of Officer Guthrie and against McKinney. (Doc. 150.)

On April 27, 2007, McKinney filed a notice of appeal regarding the dismissal of Defendants Zihmer, Wise, Stender, and Bloor; the grant of summary judgment as to Defendant Ward; the jury verdict for Officer Guthrie; and the denial of a discovery request. (Doc. 154.) On February 2, 2009, the Third Circuit affirmed the court's order and judgment regarding the dismissal of Defendant Ward, the verdict for Officer Guthrie, and the order regarding discovery, but vacated the court's order entered on March 20, 2007, which granted summary judgment in favor of Defendants Zihmer, Wise, Stender, and Bloor due to McKinney's failure to exhaust administrative remedies. (Doc. 161.) A mandate issued on February 25, 2009. (Doc. 163.)

On March 4, 2009, the court directed the remaining Defendants to file a brief in support of a grant of summary judgment in their favor. (Doc. 164.) Defendants filed their brief in support on March 24, 2009. (Doc. 165.) McKinney has filed a response.

4

(Doc. 166.) Since Defendants have not filed a reply brief, this matter is now ripe for disposition.

## II.  Statement of Facts

The following facts are necessary for disposition of the instant motion for summary judgment. On December 21, 1999, McKinney was purportedly assaulted by Officers Guthrie and Zihmer while being escorted to his cell from a Program Review Committee hearing. (Doc. 165-3, Ex. A, Compl., 5.) As a result of the altercation, Officer Guthrie issued McKinney Misconduct A130269, charging him with assault and using abusive language toward an employee. (Doc. 165-3, Ex. B, Misconduct A130269, 8-9.) In that Misconduct report, Officer Guthrie stated that McKinney struck Officer Guthrie with his waist belt and handcuffs, bit him on his left knee, and stated, "I'm going to get you every time I come out of my cell." (*Id*. at 8.)

On December 23, 1999, as McKinney was being escorted to his hearing on Misconduct A130269 by Officers Wise, Stendor, and Bloor, McKinney was allegedly assaulted again. (Doc. 165-3 at 5.) As a result of this altercation, Officer Wise issued McKinney Misconduct A130271, charging him with assault, refusing to obey an order, using abusive language towards an employee, and threatening an employee.

(Doc. 165-3, Ex. C, Misconduct A130271, 11-12.) In that Misconduct report, Officer Wise stated that McKinney became assaultive when the officers arrived to escort him to the misconduct hearing on Misconduct A130269 by attempting to pull his waist belt and tether through the cell's food tray slot, attempting to exit the cell, and stating, "I'm going to fuck you up, Stenger." (*Id.* at 11.) Due to this altercation, McKinney was unable to attend his misconduct hearing on Misconduct A130269. (*Id.* at 9.) He was found guilty in absentia and sentenced to ninety days of disciplinary custody. (*Id.*)

A misconduct hearing on Misconduct A130271 was held on December 29, 1999, with McKinney in attendance. (*Id.* at 12.) McKinney pleaded not guilty to all the charges and stated his wish to remain silent. (*Id.*) He was found guilty of attempted assault and threatening an employee with bodily harm, and sentenced to ninety days of disciplinary custody. (*Id.*)

On January 18, 2000, McKinney filed an Inmate Request to Staff Member to Superintendent Dragovich, informing him that he had been assaulted by unnamed officers on four occasions: June 25, 1997, August 8, 1997, December 21, 1999, and December 23, 1999. (Doc. 166-2, Ex. D, Inmate Request to Staff Member, 9-10.) In his response dated January 19, 2000, the Superintendent informed McKinney that

investigations into his allegations would be conducted out of the institution's Security Office. (*Id*. at 9.)

On February 10, 2000, McKinney filed Grievance No. CAM-0099-00, alleging that Officer Guthrie threatened to kill him on that date. (Doc. 165-3, Ex. D, Inmate Grievance No. CAM-0099-00, 14.) The Grievance Officer denied McKinney's grievance on February 18, 2000. (Doc. 165-3, Ex. D, Review by Grievance Coordinator, 15.) On February 24, 2000, McKinney filed an appeal to Superintendent Dragovich on this denial, but also raised the allegation that he had been assaulted by Officers Guthrie and Zihmer on December 21, 2009. (Doc. 165-3, Ex. D, Appeal to Staff Member, 16-17.) Superintendent Dragovich denied McKinney's appeal on March 1, 2000, after reviewing McKinney's original grievance, the grievance officer's response, and McKinney's appeal. (Doc. 165-3, Ex. D, Superintendent Response, 18.)

Thereafter, McKinney appealed Grievance No. CAM-0099-00 to the Chief Hearing Examiner for final review. (Doc. 165-3, Ex. D, Appeal, 19.) In his appeal, McKinney stated, "I was abused by C/O Guthrie on December 21, 1999 . . . ." (*Id*.) He does not mention any other Officer in his appeal. (*Id*.) On April 26, 2000, Chief Hearing Examiner Robert Bitner responded, notifying McKinney that after reviewing the entire record of the grievance and the issues raised in his appeal for final review,

"it is the decision of this office to uphold the responses provided by staff at the institutional level. I find the issues raised for final review have been addressed by the Grievance Coordinator and the Superintendent, and their responses are reasonable and appropriate. I concur with the responses already provided at the institutional level." (Doc. 165-3, Ex. D, Bitner Letter, 20.)

McKinney also filed an Inmate Request to Staff Member on March 23, 2000, alleging that he had been assaulted on December 21, 1999, by Officers Guthrie and Zihmer, assaulted on December 23, 1999, by Officers Stender and Bloor, and requested an investigation. (Doc. 165-3, Ex. E, Inmate Request to Staff Member, 22-24.) He also stated that he wished to file a criminal complaint against Officer Guthrie. (*Id*. at 22.) Further, McKinney noted, "I do know that I have to exhaust all available administrative remedies before submitting anything to the court." (*Id*. at 24.) In his March 28, 2000 response to the request, Superintendent Dragovich informed McKinney that his request was being referred to the Security Office for investigation because he was alleging assault by staff members. (*Id*. at 22.) Additionally, he advised McKinney to contact the Pennsylvania State Police's Criminal Investigation Unit if he wished to pursue a criminal prosecution. (*Id*.)

McKinney did contact the Pennsylvania State Police concerning his allegations of assault by Officer Guthrie. (*See* Doc. 166-2, Ex. I, Letter, 19.) In response, by letter dated May 15, 2000, Commanding Officer Marcantino notified McKinney of the following:

> The Department of Corrections has established an Office of Professional Responsibility to investigate complaints such as yours. To facilitate the work of this office, each Correctional Institution has assigned an Intelligence Officer responsible for reviewing and investigating these matters. Therefore, I am forwarding a copy of your letter to the Intelligence Officer at your institution, with a copy provided to the Director, Office of Professional Responsibility, for any action deemed appropriate.

(*Id*.) By letter dated May 26, 2000, the Director of the Office of Professional Responsibility ("OPR") confirmed that an investigation of McKinney's allegations was being assigned to SCI-Camp Hill's Security Office. (Doc. 166-2, Ex. J, Letter, 20.) In the Security Office's subsequent report dated July 20, 2000, Security Officer A.S. Keck indicated that the office had received a request slip/grievance written by McKinney on April 3, 2000, and a case from OPR on June 1, 2000. (Doc. 166-2, Ex. O, Security Office Findings, 25-35.) Because these filings covered the same allegations, the Security Office combined them into one investigation. (*Id*. at 25.) Further, the Security Office's report indicates that a thorough investigation of both alleged incidents was conducted, including the taking of statements and review of

9

documentation and videotape. (*Id.*) After investigating the claims, the Security Office found them to be without merit and recommended that the Security Office take no further action concerning McKinney's request slip/grievance or the OPR case. (*Id.* at 35.) McKinney was informed of the same by letter from Security Lieutenant Keck dated August 3, 2000. (Doc. 166-2, Ex. P, Letter, 36.)

### III. <u>**Standard of Review - Motion for Summary Judgment**</u>

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## IV. <u>Discussion</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), exhaustion of administrative remedies is required for all

actions concerning prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion must also be "proper." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Hence, an inmate must "us[e] all steps that the agency holds out." *Id.* at 90. Nonetheless, a prisoner's "[c]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000). *See also Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers may have impeded filing of grievance); *Harris v. Armstrong*, 149 F. App'x 58, 59-60 (3d Cir. 2005) ("a prisoner's civil rights case may be heard on the merits notwithstanding the failure to file a DC-ADM 804 grievance under certain limited circumstances." ) (citing *Camp*, 219 F.3d at 281); *Casey v. Smith*, 71 F. App'x 916, 918 (3d Cir. 2003) ("exhaustion can be waived if the ultimate

administrative authority fully examines the grievance on the merits.") (citing *Camp*, 219 F.3d at 281).

Because an inmate's failure to exhaust under the PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The Pennsylvania DOC has established several methods by which Pennsylvania inmates can grieve their claims of abuse before seeking redress in federal court. First, the Pennsylvania DOC has an "Inmate Abuse Allegation Monitoring" policy expressing the principle that an inmate should "not [be] subjected to corporal or unusual punishment, *or personal abuse or injury*."
DOC Policy Statement DC-ADM 001, "Inmate Abuse Allegation Monitoring," Part V, "Policy," *available at* http://www.cor.state.pa.us (emphasis in original). In part, "abuse" is defined in the policy as "[c]onduct by an employee . . . that involves . . . the use of excessive force upon an inmate," but which excludes "conditions of confinement." *Id*., Part IV(A), "Definitions." An inmate can report abuse in three ways:

> 1. report it verbally or in writing to any staff member;
>
> 2. file a grievance in accordance with Department policy DC-ADM 804, "Inmate Grievance System;" or
>
> 3. report it in writing to the Department's Office of Professional Responsibility (OPR).

*Id*., Part VI(D), "Procedures."

Further, the Pennsylvania DOC has an inmate grievance system which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa. Code § 93.9(a); *see also* DC-ADM 804, "Inmate Grievances," *available at* http://www.cor.state.pa.us. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and Appeals. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process). Moreover, DC-ADM 804 specifically provides that: "A grievance dealing with allegations of abuse shall be handled in accordance with Department policy DC-ADM 001, 'Inmate Abuse Allegation Monitoring Process.'" DC-ADM 804, Part VI(B)(10), "Procedures - Initial Review."

Defendants' motion for summary judgment is based solely on the position that McKinney failed to completely exhaust his available administrative remedies under DC-ADM 804, specifically that he failed to pursue his allegations against Defendants by way of Grievance No. CAM-0099-00 through all of the tiers required by DC-ADM 804. In opposition, McKinney does not dispute that he did not raise allegations against all of the remaining Defendants via DC-ADM 804.[2] Rather, he asserts that his compliance with DC-ADM 001 satisfies the PLRA's exhaustion requirement.

The court agrees with McKinney. As noted, DC-ADM 001 permits an inmate to report a claim of abuse either by grieving it under DC-ADM 804 or by reporting it under DC-ADM 001.[3] Here, initially McKinney filed an Inmate Request to Staff Member on January 18, 2000, raising allegations of abuse on, *inter alia*, December 21 and 23, 1999. (Doc. 166-2 at 9-10.) Superintendent Dragovich responded, informing McKinney that the Security Office would handle the investigation into his allegations. (*Id*. at 9.) McKinney filed another Inmate Request to Staff Member on March 23,

---

[2] It is not in dispute that McKinney did raise the allegation of assault on December 21, 1999, by Officers Guthrie and Zihmer in his appeal from the denial of Grievance No. CAM-0099-00. (Doc. 165-3 at 16-17.) However, Defendants claim that McKinney procedurally defaulted his claims with respect to the remaining Defendants because the claims presented in the complaint were not properly raised by way of this grievance. (Doc. 165 at 8.) For the reasons set forth herein, *infra*, the court rejects this argument.

[3] As noted above, the third method is a verbal or written report to any staff member.

2000, raising his allegations of abuse on December 21, 1999, by Officers Guthrie and Zihmer, and on December 23, 1999, by Officers Stender and Bloor. (Doc. 165-3 at 22-24.) Superintendent Dragovich responded, informing McKinney that his request was being referred to the Security Office for investigation. (*Id*. at 22.) He also advised McKinney to contact the State Police if he wished to pursue a criminal prosecution. (*Id*.) McKinney did so, and was informed that his request for an investigation was being forwarded to the institution's Intelligence Officer as well as to the OPR. (Doc. 166-2 at 19.) Once the request was forwarded to these offices, McKinney was informed that his request to both offices would be consolidated into one investigation to be conducted by the Security Office. (Doc. 166-2 at 25.) The resulting report indicates that the Security Office investigated McKinney's claims of abuse on December 21 and 23, 1999, with respect to Defendants Guthrie, Zihmer, Stender, and Bloor. (*Id*. at 25-35.) The Security Officer conducting the investigation concluded, "After reviewing all pertinent statements, documentation and the videotape, this writer cannot substantiate inmate McKinney's allegations of assault by Officers Guthrie and Zihmer on 12/21/99 and by Officers Bloor and Stender on 12/23/99." (*Id*. at 34.) He also recommended that the Security Office "take no further

action concerning inmate McKinney's letter . . . or the OPR Case Number 00-A-141." (*Id*. at 35.)

The exhaustion of administrative remedies is an affirmative defense. *Ray*, 285 F.3d at 295. Defendants filed no reply brief to McKinney's argument that he complied with the exhaustion requirement by way of DC-ADM 001. Based on the record, the court must conclude that McKinney has complied with the PLRA's exhaustion requirement with respect to Defendants Zihmer, Stender, and Bloor, because the OPR, by way of a consolidated investigation with the Security Office, the only office he had to report his abuse allegations to, examined McKinney's complaint on the merits and found them lacking. However, as McKinney did not pursue an allegation against Defendant Wise through any means referenced herein, he therefore has failed to exhaust his administrative remedies as to Defendant Wise, and the motion for summary judgment will be granted as to him.

An appropriate order will issue.

s/Sylvia H. Rambo<br>United States District Judge

Dated: March 23, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK McKINNEY,** | : | |
| Plaintiff | : | CIVIL NO. 1:CV-01-02088 |
| v. | : | (Judge Rambo) |
| **C.O. ZIHMER,** *et al.*, | : | |
| Defendants | : | |

# **O R D E R**

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) The motion for summary judgment (Doc. 97) is **GRANTED** with respect to Defendant Wise.

2) Entry of judgment on his behalf is **DEFERRED** pending further order of court.

3) The motion for summary judgment (Doc. 97) is **DENIED** with respect to Defendants Zihmer, Stender, and Bloor.

4) The court will issue a separate scheduling order.

                                      s/Sylvia H. Rambo
                                      United States District Judge

Dated: March 23, 2010.